UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| TIMOTHY H. PAXSON | : | |
| Debtor | : | Bankruptcy No. 13-10817 |
| ROYAL MARKETING, LLC | : | |
| | : | |
| Plaintiff | | |
| v. | : | |
| TIMOTHY H. PAXSON | : | |
| | | Adversary No. 13-0121 |
| Defendant | : | |

...................................................

STATEMENT OF REASONS IN SUPPORT OF ORDER

...................................................

AND NOW, upon motion of the debtor/defendant to dismiss this adversary

proceeding,[1]

And upon consideration of the plaintiff's response in opposition thereto,

---

[1]The defendant's motion also seeks "fourteen (14) days after this Court's resolution of these Motions [sic] in order to file an Answer or other responsive pleadings." Motion, ¶ 31.  This relief is already provided by Federal Rule of Bankruptcy Procedure 7012(a), which states in relevant part:

> The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 14 days after notice of the court's action. . . .

As the defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), incorporated by Rule 7012(b), as his motion will be denied for reasons that follow, and as there is no reason to fix a different time from that set forth in the procedural rule, he will be afforded 14 days to file an answer to the plaintiff's complaint.

And the plaintiff's complaint consists of one count: a determination that its prepetition claim against the debtor/defendant, allegedly in the amount of $208,735, is not dischargeable pursuant to 11 U.S.C. § 523(a)(4),

And the plaintiff alleges that it is a licensed dealer under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499e, et seq.  Complaint, ¶ 3; exhibit 1,

And the plaintiff further avers that it sold wholesale produce worth $208,735 to James H. Paxson & Sons, Inc. between March 26, 2012 and May 4, 2012, for which it was never repaid; moreover, the plaintiff alleges that this corporate purchaser of its wholesale produce is also licensed under PACA.  Complaint, ¶¶ 6-7; exhibit 2,

And the plaintiff asserts that the debtor/defendant "was an officer, director, and/or owner of James H. Paxson & Sons, Inc., id., ¶ 4, and "was in a position of control over PACA trustee assets belonging to Plaintiff at all times relevant hereto," and operated the corporation when the plaintiff's invoices became due and were unpaid.  Id., ¶¶ 4, 9. In addition, the plaintiff attached an exhibit purporting to list the debtor/defendant as one of two principals on the PACA license issued to James H. Paxson & Sons, Inc. Complaint, ex. 2,

And the plaintiff contends that the sale of this produce to the corporation established a statutory PACA trust in the produce as well as in all proceeds later obtained by the corporate purchaser.  Complaint, ¶ 8,

And the trust asserted by the plaintiff arises from the provisions of the PACA statute, specifically 7 U.S.C. § 499e(c)(2), which  provides:

> Perishable agricultural commodities received by a
> commission merchant, dealer, or broker in all transactions,

and all inventories of food or other products derived from
perishable agricultural commodities, and any receivables or
proceeds from the sale of such commodities or products, shall
be held by such commission merchant, dealer, or broker in
trust for the benefit of all unpaid suppliers or sellers of such
commodities . . . until full payment of the sums owing in
connection with such transaction has been received. . . .,

And the Third Circuit Court of Appeals has explained:

The trust provision [found in section 499e(c)(2)] requires
produce purchasers to hold sufficient PACA trust assets in
trust to pay all suppliers.  Read in light of the legislative
finding, the trust provision also straightforwardly provides
unpaid suppliers with priority over secured lenders with
regard to PACA trust assets held in trust by produce
purchasers.  It effectively vitiates a lender's security interest
in trust assets held by produce purchasers vis a vis unpaid
produce suppliers.

Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.,16 F.3d 1374, 1379 (3d

Cir. 1994),

        And the trust created by PACA is a "non-segregated floating trust," see,

e.g., Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2d Cir.

1995), imposed upon the purchased agricultural commodities, as well as the proceeds and

products derived therefrom, to insure that the commodity sellers are paid in full.  See,

e.g., In re L. Natural Foods Corp. 199 B.R. 882, 885 (Bankr. E.D. Pa. 1996),

        And to the extent that the PACA purchaser fails to use the proceeds from its

sale of the wholesale produce to repay the PACA seller, then the PACA purchaser can be

held liable for misusing trust assets.  Moreover, individuals that permit the PACA

purchaser to misuse trust founds may be also be liable.  As explained by the Third Circuit

Court of Appeals:

The theme of the PACA trust devolves to this: to benefit
producers of perishable agricultural items sold nationally to

3

> consumers, PACA places duties on those entrusted with such
> items for sale—the licensed sellers, or "middlemen" between
> producers and consumers—to prefer the producers over
> others. In the event of a breach of those duties, "liability
> attaches first to the licensed seller of perishable agricultural
> commodities.  If the seller's assets are insufficient to satisfy
> the liability, others may be found secondarily liable . . . ."

Bear Mountain Orchards, Inc. v. Mich-Kim, Inc., 623 F.3d 163, 167 (3d Cir. 2010)

(quoting Shepard v. K.B. Fruit & Vegetable, Inc., 868 F. Supp. 703, 706 (E.D. Pa. 1994)),

And such "[i]ndividual liability in the PACA context is not derived from

the statutory language, but from common law breach of trust principles."  Weis-Buy

Services, Inc. v. Paglia,  411 F.3d 415, 421 (3d Cir. 2005).  Moreover, such individual

liability is imposed only upon those who "had the authority to direct the control of ( i.e.,

manage) PACA assets held in trust for the producers."  Bear Mountain Orchards, Inc. v.

Mich-Kim, Inc., 623 F.3d at 169,

And whether an individual was in a position to control the disposition of

PACA trust assets, which trust assets were misused and not paid to their producer/

beneficiary, is a fact-intensive query:

> It calls on courts to: 1) determine whether an individual holds
> a position that suggests a possible fiduciary duty to preserve
> the PACA trust assets ( e.g., officer, director, and/or
> controlling shareholder); and 2) assess whether that
> individual's involvement with the corporation establishes that
> she was actually able to control the PACA trust assets at
> issue.  The ability to control is core.  A formal title alone is
> insufficient—especially when faced with a small, "mom and
> pop" corporation such as Fleisher Produce, where formalities
> may be less meaningful.

Id., 623 F.3d at 172 (footnote omitted),

And the defendant seeks dismissal for the plaintiff's alleged failure to state

a cause of action.  Federal Rule of Bankruptcy Procedure 7012 incorporates, <u>inter alia</u>,

Federal Rule of Civil Procedure 12(b)(6),

And in determining, in general, whether a cause of action has been stated,

the Third Circuit Court of Appeals has instructed as follows:

> A complaint may be dismissed for "failure to state a claim
> upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).
> The court must "'accept all factual allegations as true,
> construe the complaint in the light most favorable to the
> plaintiff, and determine whether, under any reasonable
> reading of the complaint, the plaintiff may be entitled to
> relief.'"  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d
> Cir. 2009) (quoting <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d
> 224, 233 (3d Cir. 2008)).  Nevertheless, the plaintiff must
> provide "more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do."
> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct.
> 1955, 167 L. Ed. 2d 929 (2007) (citation and internal
> quotation marks omitted).  The plaintiff must allege "enough
> facts to state a claim to relief that is plausible on its face."  <u>Id.</u>
> at 570, 127 S. Ct. 1955.
>
> We engage in a three-step analysis to determine the
> sufficiency of a complaint:
>
> First, the court must "tak[e] note of the elements a plaintiff
> must plead to state a claim."  Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief."

<u>Advanced Rehabilitation, LLC v. UnitedHealthgroup, Inc.</u>, 498 Fed. Appx. 173, 176 (3d

Cir. 2012) (non-precedential) (quoting <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221

(3d Cir. 2011)),

And the debtor/defendant raises two grounds for dismissal.  First, to the

extent that  any PACA trust liability he may have is "secondary" to that of the PACA

purchaser—here, James H. Paxson & Sons, Inc.— the debtor/defendant contends that

any PACA derived claim against him is premature until a court determines that James H.

Paxson & Sons, Inc. has insufficient assets to repay the plaintiff.  Motion, ¶¶ 21-23,[2]

> And this contention was rejected by the Third Circuit Court of Appeals:
>
> We likewise reject the contention that the claims against
> Scolio [the individual] did not accrue until Sellers exhausted
> their remedies as against United Fruit [the PACA purchaser].
> ***
> As Scolio's liability is wholly separate from the corporation's
> liability, there is no reason to require Sellers to first bring
> claims against the corporation before pursuing claims against
> Scolio.  Sellers could have brought suit simultaneously, as the
> parties did in Golman-Hayden Co., 217 F.3d at 349, or they
> simply could have sued Scolio directly for breaching his
> duties.

Weis-Buy Services, Inc. v. Paglia, 411 F.3d at 423-24,[3]

---

[2]Although the debtor/defendant raises this argument, he acknowledges in his motion, ¶ 16, that James H. Paxson & Sons, Inc. has filed its own chapter 7 bankruptcy petition.

[3]The Weis-Buy Services court held that a PACA claim against an individual would arise when the PACA invoices went unpaid, see id., at 423, and were governed by a two-year statute of limitations.  Id., at 422 (borrowing from Pennsylvania's limitations for breach of fiduciary duty claims).  Thus, to conclude that all PACA claims against individuals for breach of fiduciary duty must first await the outcome of PACA claims against the corporate purchaser could insulate individuals from valid claims, as the statute of limitations could easily run if the corporate purchaser contested its liability or if liquidation of its assets took time.

Moreover, the debtor/defendant misconstrues the nature of secondary liability.  In general, one who is secondarily liable (such as an employer for the negligence of an employee, see, e.g., Williams v. Rene 72 F.3d 1096, 1099 (3d Cir. 1995)) can be sued without the necessity of a prior adjudication and unsuccessful recovery against the primary obligor.  However, one who is secondarily liable may have a common law right of equitable subrogation that a primary obligor would not have.  See, e.g., Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co., 968 F.2d 357, 361 (3d Cir. 1992); see also 11 U.S.C. § 509(a); In re Alloway, 37 B.R. 420 (Bankr. E.D. Pa. 1984).

And, second, the defendant maintains that the allegations in the complaint are insufficiently detailed to establish his individual liability for breach of his fiduciary duty under the PACA trust,

And as noted above, the plaintiff has alleged that the debtor/defendant was an officer, director and/or owner of the PACA purchaser, James H. Paxson & Sons, Inc., was in a position to control the disposition of PACA trust assets when the PACA invoices went unpaid, is listed as one of two principals of the corporate PACA license, and also that he operated James H. Paxson & Sons, Inc. during the relevant time period,

And these allegations, which are deemed to be true for purposes of this motion as well as all reasonable inferences therefrom, are sufficient to meet the plaintiff's burden in its complaint to state a cause of action against the debtor/defendant under PACA.   See, e.g., Weis-Buy Farms, Inc. v. Quality Sales LLC, 2012 WL 2237166, at *3 (D. Conn. June 15, 2012) (and cases cited),

Accordingly, as neither contention raised by the debtor/defendant is persuasive, an order will be entered denying the debtor/defendant's motion to dismiss and directing him to respond to the complaint within 14 days.[4]

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: May 17, 2013

_____

[4]As the debtor/defendant has not raised the issue I need not decide whether an individual debtor's liability under PACA, which liability arises from a breach of a fiduciary duty, constitutes a "defalcation while acting in a fiduciary capacity" for purposes of nondischargeability under 11 U.S.C. § 523(a)(4).  See generally Bullock v. BankChampaign, N.A., 2013 WL 1942393 (U.S. May 13, 2013).

7